**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND GRALA, JR., | CIVIL ACTION NO. 05-5141 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| TRENTON MUNICIPAL COURT, et al., | |
| Defendants. | |

**COOPER, District Judge**

The plaintiff, Raymond Grala, Jr., brings this action against the defendants — Trenton Municipal Court ("Municipal Court") and City of Trenton ("City") — (1) to recover damages for emotional distress for violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RHA"), and the New Jersey Law Against Discrimination ("NJLAD"), and (2) pursuant to 28 U.S.C. § ("Section") 1331. (Compl., at 2-5.) The City moves to dismiss the complaint insofar as asserted against it under the Rooker-Feldman doctrine. (Dkt. entry nos. 3-5, 10-12.) The plaintiff cross-moves for summary judgment. (Dkt. entry nos. 8,13.)

The Court, under Federal Rule of Civil Procedure ("Rule") 78, will decide the motion and cross motion without oral hearing and on the papers. The Court will (1) grant the part of the motion seeking dismissal of the ADA and RHA claims against the City, (2) dismiss the ADA and RHA claims against both defendants, (3) deny as moot the part of the cross motion seeking summary judgment on

the ADA and RHA claims, (4) dismiss the NJLAD claims against both defendants without prejudice to reinstate in state court, and (5) deny without prejudice (a) the part of the motion seeking dismissal of the NJLAD claim against the City, and (b) the part of the cross motion seeking summary judgment on the NJLAD claims.

**BACKGROUND**

Grala — who is "deaf and communicates primarily through American Sign Language" — was cited in June 2005 in Trenton, New Jersey, for driving while intoxicated ("DWI"), careless driving, and speeding. (Compl., at 2; 11-28-05 Trimboli Aff., Ex. A, Citation; 1-5-06 Trimboli Aff., Ex. 1, Plea Hearing Tr. ("Tr."), at 2.) Upon appearing in Municipal Court on July 21, 2005, he (1) "was provided with an interpreter by the [Municipal] Court," and (2) agreed to enter a plea of guilt to the DWI charge in exchange for avoiding a trial on all three charges. (Compl., at 3; Tr., at 2-3.) The Municipal Court judge ("MC Judge") then conducted the following colloquy, in relevant part, with Grala's public defender ("PD") and Grala through the interpreter:

> MC JUDGE: . . . Would you tell Mr. Grala that what I'm being told then is he would be entering a plea of guilty to the charge of driving while under the influence. If the Court would accept that plea of guilty, the remaining matters pending before the Court then would be dismissed. Does he understand that?
>
> INTERPRETER: Yes.
>
> MC JUDGE: . . . Now, there are certain mandatory penalties that he would be facing from this charge, and does he recall us discussing in the past those mandatory penalties?

> INTERPRETER: I do.
>
> . . .
>
> MC JUDGE: . . . Would you tell Mr. Grala then, or ask him as to the charge of driving while under the influence, how does he plead, guilty or not guilty?
>
> INTERPRETER: Guilty.
>
> MC JUDGE: And would you ask Mr. Grala whether he understands that by entry of that plea of guilty it means now there will not be a trial here?
>
> INTERPRETER: That's correct.
>
> MC JUDGE: He's giving up that right to have a trial voluntarily. No one here is forcing him to do this.
>
> INTERPRETER: That is correct.
>
> . . .
>
> PD: . . I've advised my client that it's more likely than not that the term of suspension of his New Jersey driving privileges would be seven months, that the fine would be the minimum prescribed by the statute, that being $300, that there be some mandatory assessments as I described that would approximate almost another $400.

(Tr., at 4-7,12.) The MC Judge stated nothing more on the record as to the fines or fees to be imposed before issuing the sentence.

The MC Judge then issued the sentence, stating that Grala's license would be "suspend[ed] for the minimum time of the seven months," and that:

> I'm satisfied that the minimum penalties can be imposed here. I'm going to impose a $306 fine, $33 in court costs. There's a $50 VCCB penalty, and a $75 Safe Streets assessment, a $100 DWI Surcharge, and a $100 DWI penalty. I'm going to assess a $100 public defender fee and a $100 interpreter's fee.

(Id. at 13-14.) The MC Judge then advised Grala that he "ha[d] 20 days to appeal." (Id. at 16.)

The Municipal Court entered a judgment of conviction ("Judgment") sentencing Grala to a seven-month license suspension and "fines, costs and penalties . . . in the amount of [$]864.00." (11-28-05 Trimboli Aff., Ex. B, 7-21-05 Judg.) Grala acknowledged the Judgment with his signature. (Id.) The MC Judge also listed the individual fines and fees on a separate document, including the $100 "interpreter's fee." (Id., Ex. A.)

Grala, according to the complaint, then called:

> the Division of the Deaf in Trenton who advised him that it was the court's responsibility to pay for the interpreter. Plaintiff subsequently approached the [MC Judge] to advise . . . through the interpreter that it was the Court's obligation to obtain and pay for the certified interpreter as explained by the Division of the Deaf. [The MC Judge] replied "This is my courtroom and I make the rules." Plaintiff was then forced to pay for the interpreter by the Court.

(Compl., at 3.)

Grala then brought this action, alleging the defendants' conduct caused him to be "surcharged a fee for an auxiliary aid in direct violation of both Federal and State law." (Id.) He asserts he is entitled to recover damages for being "ignored and humiliated," and for "mental pain and anguish." (Id.) Grala does not assert any claims related to the MC Judge's imposition of a "public defender fee."

The City now moves to dismiss the complaint insofar as asserted against it based on the Rooker-Feldman doctrine, arguing

that the Court is barred from determining whether the Judgment was entered erroneously. (City Br.) Grala argues in opposition that his "claims arise out of the [ADA], the [RHA] and [NJLAD], none of which were argued or litigated in the underlying municipal court matter." (Pl. Br., at 3.) He also argues that (1) the "merit of this conviction is not at issue here; but rather the discriminatory actions of the [MC Judge] in [the] treatment of a disabled defendant are," and (2) the "defendants violated these anti-discrimination laws when they surcharged the plaintiff with the cost of the accommodation they were obligated to provide and pay for under the law." (Id. at 6-7.) Grala also cross-moves for summary judgment in his favor.

**DISCUSSION**

**I. Rooker-Feldman Doctrine**

A district court lacks jurisdiction when a plaintiff raises claims that were — or could have been — raised in a state court, from which the plaintiff may seek review through the state appellate process and, if warranted, certiorari to the United States Supreme Court. D.C. Ct. of Apps. v. Feldman, 460 U.S. 462, 482 & n.16 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413, 414-16 (1923). A losing party may not "seek[] what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment

itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994). Thus, the Rooker-Feldman doctrine:

> prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling. Stated another way, Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders.

McAllister v. Allegheny County Family Div., 128 Fed.Appx. 901, 902 (3d Cir. 2005) (cites and quotes omitted).

**II. Municipal-Court Judgments**

Grala argues that the Rooker-Feldman doctrine does not apply to the Judgment. (Pl. Br., at 5.) The argument is without merit. The Rooker-Feldman doctrine bars the exercise of jurisdiction when a plaintiff seeks federal judicial review of a municipal-court judgment. Johnson v. N.J. Div. of Motor Vehs., 134 Fed.Appx. 507, 509 (3d Cir. 2005); Haas v. Wisc., 109 Fed.Appx. 107, 111-12 (7th Cir. 2004), cert. denied, 543 U.S. 1053 (2005); Flowers v. Columbus Metro. Hous. Auth., 90 Fed.Appx. 893, 894-95 (6th Cir. 2004); Entrup v. City of Centr. City, Colo., No. 94-1422, 1995 WL 307578, at *3-*4 (10th Cir. May 11, 1995).

**III. Judgment**

The imposition of an "interpreter's fee" was a penal consequence flowing from the plaintiff's entry of a plea of guilt to the DWI charge, and thus part of the sentence and the Judgment. See State v. Johnson, 182 N.J. 232, 236-39 (2005); N.J.Ct.R. 7:9-

1(b) (stating sentence includes restitution and fines). Grala's allegations are "inextricably intertwined" with the Judgment. Feldman, 460 U.S. at 486. Therefore, any review by this Court of that part of the Judgment is barred by the Rooker-Feldman doctrine. Grala should have sought relief through the state courts if he failed to enter into the plea knowingly, intelligently, and voluntarily, i.e., he was not aware that the MC Judge intended to impose the fee. See N.J.Ct.R. 7:13-1 (allowing appeal from municipal-court judgment to Superior Court); N.J.Ct.R. 7:10-2 (detailing procedure and grounds for post-conviction relief in municipal court); see also Figueroa v. Blackburn, 208 F.3d 435, 442 (3d Cir. 2000) (stating New Jersey municipal-court proceedings subject to de novo review by Superior Court, and traditional appellate-review avenues then available).

Perhaps the MC Judge should have advised Grala of each fee on the record before accepting the plea. See N.J.Ct.R. 3:9-2 (stating plea accepted only if consequences are understood); Johnson, 182 N.J. at 241-42 (stating plea agreement can be vacated if party misinformed of terms or sentence was unexpected); see, e.g., State v. Tutolo, No. A-1825-04T1, 2005 WL 2877777, at *2-*3 (N.J.App.Div. Nov. 3, 2005) (faulting trial court's failure to apprise party of risks of self-representation, but showing trial court stated each fee to be imposed on record before accepting

plea). But that procedural flaw does not overcome the bar set by the Rooker-Feldman doctrine, as to exercise jurisdiction here would prevent the Municipal Court from enforcing its own judgment. See Walker v. Abraham, 156 Fed.Appx. 536, 537-38 (3d Cir. 2005) (affirming order granting motion to dismiss claim brought by plaintiff (1) convicted of drug offense, and (2) seeking, in effect, review of state-court property-forfeiture proceeding flowing from conviction).

Grala cannot avoid the Rooker-Feldman doctrine by couching the claims in terms of ADA or RHA violations, as the Court would still be required to impermissibly review the Judgment. See Boure v. Clark County Mun. Ct., No. 98-4505, 2000 WL 145382, at *1 (6th Cir. Jan. 31, 2000) (affirming order dismissing ADA claim against municipal court under Rooker-Feldman doctrine). Even though the courts, as public entities, are bound by the ADA, see Tennessee v. Lane, 541 U.S. 509, 527-34 (2004), that "is not the same as giving federal district courts appellate jurisdiction over state court judgments," as to do so "would ignore not only the firm foundation to the Rooker-Feldman doctrine but the broad terms that have been used in expressing it." Johnson v. Kansas, 888 F.Supp. 1073, 1080 (D.Kan. 1995) (concerning claim for, in effect, review of state-court order denying application to take bar exam as being contrary to ADA), aff'd, No. 95-3157, 1996 WL 159946 (10th Cir. Apr. 5, 1996). The Court does not have

jurisdiction over a challenge to a state-court decision, even if a plaintiff alleges that the state court acted in an unconstitutional manner. See Feldman, 460 U.S. at 486 (stating same).

The Court will grant the part of the City's motion seeking dismissal of the ADA and RHA claims asserted against it. The Court also will dismiss the ADA and RHA claims asserted against the Municipal Court sua sponte, as the Court lacks jurisdiction over those claims on the same grounds. See Fed.R.Civ.P. 12(h)(3) (mandating dismissal of claim if court lacks jurisdiction over subject matter). The Court will deny as moot the part of the cross motion seeking summary judgment on the ADA and RHA claims.[1]

**IV. NJLAD Claims**

The Court will not exercise supplemental jurisdiction over the NJLAD claims in view of the impending dismissal of the ADA and RHA claims. See 28 U.S.C. § 1367(c)(3) (authorizing same). Thus, the Court will (1) deny without prejudice the part of the City's motion seeking dismissal of the NJLAD claim asserted against it, (2) dismiss the NJLAD claims asserted against both

---

[1] The City argued for the first time in its reply brief that it is (1) not liable for the MC Judge's conduct, and (2) immune. (Reply Br., at 10-15.) It is improper to raise new arguments in a reply brief. Rockwell Techs. v. Spectra-Physics Lasers, No. 00-589, 2002 WL 531555, at *3 (D. Del. Mar. 26, 2002); Reap v. Cont'l Cas. Co., 199 F.R.D. 536, 550 n.10 (D.N.J. 2001). The Court will not address those arguments.

defendants without prejudice to reinstate in state court, and (3) deny without prejudice the part of the cross motion seeking summary judgment on the NJLAD claims. See 28 U.S.C. § 1367(d) (tolling limitations period for state-law claim dismissed under Section 1367 while claim pending in federal court and for 30 days after dismissal).[2]

**CONCLUSION**

The Court will (1) grant the part of the motion seeking dismissal of the ADA and RHA claims against the City, (2) dismiss the ADA and RHA claims against both defendants, (3) deny as moot the part of the cross motion seeking summary judgment on the ADA and RHA claims, (4) dismiss the NJLAD claims against both defendants without prejudice to reinstate in state court, and (5)

---

[2] Grala argues that "the cost of providing [an] accommodation may not be surcharged to the disabled individual [under] N.J.A.C. 13:13-4.6," and that N.J.S.A. § 34:1-69.15 "requires that the municipal body must pay the cost of a sign language interpreter for a deaf participant in a civil or criminal court proceeding." (Pl. Br., at 10.) He also submits a Memorandum of Understanding, wherein the New Jersey Administrative Office of the Courts agreed to have municipal courts "provide accommodations to deaf and hard of hearing individuals." (Id. at 12; see Smit Cert., Ex. A, July 2001 Mem. Of Underst'g, Derosa v. Boro of South Plainfield, N.J. Dist. Ct. Civil Action No. 99-2531 (JCL).) But N.J.A.C. 13:13-4.6, N.J.S.A. § 34:1-69.15, and the Memorandum of Understanding do not bar a municipal-court judge from imposing an "interpreter's fee" in exchange for permitting a party to avoid the risks inherent to a trial on multiple charges, e.g., a conviction and maximum penalties, by entering a plea of guilt on one.

deny without prejudice (a) the part of the motion seeking dismissal of the NJLAD claim against the City, and (b) the part of the cross motion seeking summary judgment on the NJLAD claims The Court will issue an appropriate order and judgment.[3]

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

---

[3] Counsel appeared on behalf of the City only. (See dkt. entry nos. 3, 4, 9.) The Court, if not dismissing the complaint, would order Grala to show cause why the complaint insofar as asserted against the Municipal Court should not be dismissed for his failure to comply with Rule 4(m). See Fed.R.Civ.P. 4(m) (requiring plaintiff to file proof of service of summons and complaint on defendant within 120 days after filing complaint).